UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

| IN RE: | MICHAEL G. AND JORI A. SAWDY, | Case No. 06-25130 |
|---|---|---|
| | Debtors. | Chapter 13 |

## ORDER OVERRULING TRUSTEE'S OBJECTION TO DEBTORS' MODIFIED CHAPTER 13 PLAN

The debtors in this Chapter 13 matter are above-median income debtors who own two vehicles free and clear of liens. They contend that, while they no longer make payments on their cars, the language of 11 U.S.C. § 707(b)(2)(A)(ii)(I) entitles them to deduct from their disposable income calculations the cost of ownership of the vehicles. The trustee disagrees. The Court concludes that the debtors are correct, and that in spite of the fact that they do not actually have to make a note or lease payment each month, they are entitled to deduct the IRS Local Standard amount for vehicle ownership from their disposable income for the purposes of determining how much they have available to devote to paying creditors.

**Facts**

The debtors filed their Chapter 13 petition in 2006, which means that the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") governs their matter. The debtors' Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income ("Form B22C") demonstrates that their income is above the median income for a family of their size

1

in Wisconsin, and therefore BAPCPA requires that they determine their disposable income for Chapter 13 purposes by subtracting from their "current monthly income" fixed amounts for certain expenses. On Line 28 of their Form B22C, the debtors checked the box indicating that they claimed "ownership/lease expense[s]" for two or more vehicles. They listed the amounts for these deductions as $471.00 for one vehicle and $332.00 for the second vehicle.

On Line 58 of their original Form B22C, the debtors showed that they had $156.32 per month in disposable income to devote to paying unsecured creditors during a Chapter 13 plan. The debtors' original Chapter 13 plan proposed to pay the trustee $115 weekly for 60 months, for a total payment over the life of the plan of $29,645.91. Paragraph 7 indicated that the proposed plan would allow the trustee to pay general unsecured claims at a *pro rata* share of 46%.

Two weeks later, the debtors filed an amended Form B22C. The amended form reflected an additional deduction from the debtors' disposable income of $189.65 on Line 48 for past-due payments on the debtors' homestead property. This new deduction reduced the debtors' disposable income dramatically; Line 58 of the amended form showed that the debtors had *negative* $33 to devote to a Chapter 13 plan. Accordingly, the debtors moved to modify their plan. By this modification, they proposed to reduce the dividend for unsecured creditors from 46% to 0%. It was this proposed modification to the plan that gave rise to the trustee's objection to confirmation.

2

The trustee argues that the modified plan does not devote all of the debtors' projected disposable income to the plan as required by 11 U.S.C. §§ 1325(a)(3) and (b)(1)(B). Particularly, the trustee objects that the debtors should not be allowed to claim vehicle ownership deductions, because the debtors' vehicles aren't subject to a lien or lease agreement. In other words, the debtors aren't making any note or lease payments on their vehicles, so the trustee argues that they should not be allowed to use such expenses to reduce the amount of disposable income they have available to fund a plan. Indeed, the trustee argues that in this case, if the debtors had not deducted the ownership expenses for their two vehicles, they'd have enough disposable income to pay their unsecured creditors in full.

The debtors disagree with the trustee's position. They pointed out at the hearing on the objection that several courts have ruled that debtors may deduct the ownership expense, even if those debtors aren't making note payments or lease payments. They argued that debtors whose vehicles have been paid off generally own older vehicles—vehicles which are more likely to need repair or replacement during the life of the plan. (These debtors own a 1996 Ford Explorer XLT with 115,000 miles on it and a 1993 Ford Escort LX wagon with 160,000 miles on it.) They argued that, if they were not allowed to deduct ownership expenses for these vehicles, they would be at a disadvantage if they had to—as they were likely to do—repair or replace a vehicle during the plan's life.

3

## Discussion

### I.  Jurisdiction

The issue in this case involves a core proceeding under 28 U.S.C. §

157(b)(2)(A), and this Court has jurisdiction under 28 U.S.C. § 1334(b).

### II.  Burden of Proof

Section 1325, which governs confirmation of Chapter 13 plans, does not tell

us who bears the burden of proof when a party objects to confirmation.  In In re

Mendenhall, 54 B.R. 44, 45-46 (W.D. Ark. 1985), Judge Mixon points out that the

courts are divided on the question of whether the objecting party or the debtor bears

the burden of proof:

> . . . In one line of cases the courts have ruled that the proponent of a
> Chapter 13 plan has the burden of proof to show that the requisite
> tests for confirmation have been met . . . .  Following the general rule
> in civil litigation, other courts have determined that the burden of
> proof rests on the moving party, the creditor objecting to confirmation
> fo the debtor's Chapter 13 plan.

Id. (citations omitted)

Judge Mixon also points out that the phrase "burden of proof" has two

components–the burden of persuading the trier of fact, which is "static" and

"remains on the party in whom it is first placed," and the burden of producing

evidence, which shifts from party to party.  Id. at 46.

In the current case, there is no need for the parties to produce evidence.  The

parties do not dispute that the debtors own their vehicles free and clear, and that

they are not making any note or lease payments on those vehicles.  Thus, there is no

4

burden of producing evidence. The only burden applicable in this case is the burden of persuading the Court on the legal issue the trustee has raised. In Mendenhall, Judge Mixon placed the burden of persuasion on the trustee. Id. at 46. This Court does the same, and holds that the trustee has the burden of persuading the Court that the debtors should not be allowed to deduct the ownership expenses.

III. **Current Law**

A. *The Statute*

Section 1325(a)(3) states that a court shall confirm a plan if, among other things, it is "proposed in good faith and not by any means forbidden by law." Section 1325(b)(1)(B) holds that if either the trustee or the holder of an allowed, secured claim objects to a proposed plan, the court cannot approve that plan unless "the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period . . . will be applied to make payments under the plan."

The difficult task under BAPCPA is determining the debtor's "projected disposable income." Section 1325(b)(2) defines "disposable income" as "current monthly income received by the debtor . . . less amounts reasonably necessary to be expended [for certain purposes]." In the almost 1½ years since the implementation of BAPCPA, bankruptcy practitioners have become familiar with the term "current monthly income"–it is the "average monthly income from all sources that the debtor receives . . . derived during the 6-month period ending on the last day of the

5

calendar month immediately preceding the date of the commencement of the case . . . ." 11 U.S.C. § 101(10A).

The "amounts reasonably necessary" that an above-median-income debtor can subtract from the "current monthly income" to yield his disposable income are determined by looking at 11 U.S.C. §§ 707(b)(2)(A) and (B). Section 707(b)(2)(A) requires above-median-income debtors to subtract "the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards . . . issued by the Internal Revenue Service for the area in which the debtor resides . . . ." The IRS has Local Standards for vehicle ownership costs. The standards for the greater metropolitan Milwaukee area, where these debtors live, provide for ownership costs of $471 for a first vehicle and $332 for a second vehicle–exactly the amounts the debtors have deducted on their amended Form B22C.

The question, of course, is whether the debtors may reduce their disposable income by deducting those ownership costs when they're not actually making payments on vehicles. In trying to answer this question, the Court next turns to the case law.

B.    *The Case Law*

As courts and practitioners frequently find when interpreting provisions of BAPCPA, reasonable minds are quite capable of disagreement. Such is the case when one looks at the case law that has developed on the issue in question in the current case. Two distinct lines of decisions have emerged on this issue.

6

1. Cases Refusing to Allow the Debtor to Deduct the Ownership Cost

Several courts have held that a debtor cannot deduct an ownership expense for a vehicle he or she owns free and clear. These cases include: In re Hardacre, 338 B.R. 718 (N.D. Tex. 2006); In re McGuire, 342 B.R. 608 (Bankr. W.D. Mo. 2006); In re Barraza, 346 B.R. 724 (Bankr. N.D. Tex 2006); In re Oliver, 350 B.R. 294, 301 (Bankr. W.D. Tex. 2006); In re Wiggs, ___ B.R. ___, 2006 WL 2246432 (Bankr. N.D. Ill., August 4, 2006); In re Carlin, 348 B.R. 795 (Bankr. D. Or. 2006); and In re Harris, 353 B.R. 304 (E.D. Okla. 2006).[1]

The same judge decided Hardacre and Barraza. Thus, six judges in as many districts have concluded that debtors may not deduct the vehicle ownership expense if they do not actually have a note or lease payment. Hardacre, McGuire, Wiggs and Carlin considered the issue in the context of Chapter 13 cases, in discussions of how to calculate the amount of disposable income a Chapter 13 debtor had to devote to a repayment plan. Barraza, Oliver and Harris decided the issue in the context of Chapter 7 cases, in discussions of whether the debtors' filing of Chapter 7 petitions constituted abuse under 11 U.S.C. 707(b).

2. Cases Allowing the Debtor to Deduct the Ownership Cost

A similar number of courts have come to exactly the opposite conclusion, deciding that regardless of whether a debtor actually has a note or lease payment,

---

[1] One court reached the same conclusion in a case where the debtors intended to surrender their vehicle, thus relieving themselves of their monthly vehicle payment. See In re Skaggs, 349 B.R. 594 (Bankr. E.D. Mo. 2006).

7

that debtor may deduct the vehicle ownership expense.[2] These decisions include: In re Fowler, 349 B.R. 414 (D. Del. 2006); In re Wilson, ___ B.R. ___, 2006 WL 3591266 (Bankr. D. Del. 2006); In re Hartwick, 352 B.R. 867 (Bankr. D. Minn. 2006); In re Haley, 354 B.R. 340 (Bankr. D. N. H. 2006); In re Grunert, 353 B.R. 591 (Bankr. E.D. Wis. 2006); and In re Prince, ___ B.R. ___, 2006 WL 3501281 (Bankr. M.D.N.C. 2006).

Fowler and Wilson both come from the district of Delaware. Thus, five districts have concluded that a debtor may deduct a vehicle ownership expense regardless of whether she actually has note or lease payments. Again, these cases come from both the Chapter 13 and Chapter 7 worlds: Haley and Grunert are Chapter 13 cases dealing with disposable income, and Fowler, Hartwick, Wilson and Prince are Chapter 7 cases dealing with whether abuse exists.

## IV.  **Analysis**

This Court, in analyzing the issue involved in the case at bar, thus finds itself confronted with reasoned, considered support both for the trustee's position and for the debtors' position. What follows is an attempt to tease from both groups of decisions the major rationales which support them, and to analyze those rationales to determine if they are persuasive in this case.

---

[2] One court reached the same conclusion in a case where the debtors intended to surrender their vehicles, which would result in their being relieved of their monthly note payments. See In re Walker, ___ B.R. ___, 2006 WL 1314125 (Bankr. N.D. Ga. 2006).

8

A.    *The "Plain Meaning" Rationale*

Decisions from both lines of cases rely on the "plain meaning" doctrine to support their conclusions. The plain meaning rule of statutory construction dictates that words should be given their plain, ordinary and literal meanings. The Supreme Court has instructed judges that "where . . . the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'" United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 241 (1989), *quoting* Caminetti v. United States, 242 U.S. 485 (1917). As former law professor and Nevada bankruptcy judge Bruce Markell noted in In re Kane, 336 B.R. 477, 485 (Bankr. D. Nev. 2006), " . . . there is a strong and long-standing view that the words of a statute are supreme and, if they are clear, they should be taken as fully embodying what the legislature intended. If the text is not ambiguous, that is the end of the inquiry."

The statutory language at issue here is the following language from § 707(b)(2)(A)(ii)(I): "The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses . . . ." Is the meaning of this language so plain, so clear, so unambiguous, that the Court need look no further to determine its meaning?

The question seems ironic in light of the status of the case law. If the language of § 707(b)(2)(A)(ii)(I), when given its ordinary and literal meaning, is plain, clear and unambiguous, then how could six courts have interpreted it one

9

way and five courts have interpreted it in exactly the opposite way? Doesn't the concept of "plain" meaning carry with it the implication that the same meaning would be "plain"–ordinary, literal and obvious–to every reader?

As time passes, and distinguished bankruptcy courts across the country issue more decisions interpreting various provisions of BAPCPA, this Court becomes more and more skeptical of the usefulness of the "plain meaning" doctrine as a tool of statutory interpretation. Words rarely exist in a vacuum; they rarely have fixed, single meanings. They exist, and are understood, in contexts–temporal contexts, societal contexts, and textual contexts. Most are susceptible to multiple layers of meaning. In the case of words that make up statutes, they take on meaning from the history of the law they announce, or the words they replace, or from the words which Congress did *not* choose to use. The cases involving the issue at bar illustrate this point.

In <u>In re Wiggs</u>, the bankruptcy court concluded that § 707(b)(2)(A)(ii)(I) prohibited the Chapter 13 debtor from deducting an ownership expense the debtor did not actually have. The court stated, "This Court finds that the language of the statute is clear and unambiguous. This Court finds that the term 'applicable' modifies the amounts specified [in the IRS Local Standards] to limit the expenses to only those that apply." <u>In re Wiggs</u>, 2006 WL 2246432 at *6. It was "clear" and "unambiguous" to the <u>Wiggs</u> court that the word "applicable" referred to the list of possible expenses under the IRS Local Standards, such that if a debtor did not

10

actually have one of the expenses listed in the Local Standards, that expense was not "applicable" and the debtor could not deduct it.

The very next sentence, however, demonstrates *why* this interpretation was "clear" and "unambiguous" to the <u>Wiggs</u> court. The court went on, "If the language [of § 707(b)(2)(A)(ii)(I)] were interpreted to allow every debtor the full National and Local Standard amount the term 'applicable' would be superfluous." <u>Id.</u> Thus, the <u>Wiggs</u> court based its "plain meaning" decision on its perception that to decide otherwise would render part of the statute superfluous. Such a result, of course, would fly in the face of another "'cardinal principle of statutory construction' that 'a statute ought, upon the whole, be construed so that, if it can be prevented, no clause, sentence, or word shall be superfluous, void or insignificant.'" <u>TRW, Inc. v. Andrews</u>, 534 U.S. 19, 31 (2001), *quoting* <u>Duncan v. Walker</u>, 533 U.S. 167, 174 (2001).

In <u>In re Carlin</u>, the Oregon bankruptcy court also concluded that "the statute plainly and unambiguously does not allow the vehicle operating expense at issue to 'free and clear' owners." <u>In re Carlin</u>, 348 B.R. 795, 798 (Bankr. D. Or. 2006). The <u>Carlin</u> court, however, did not base its decision on an attempt to avoid rendering a portion of the statutory language superfluous. Rather, the <u>Carlin</u> decision was based on the fact that its interpretation would not yield an absurd result. The court reasoned,

> . . . There is nothing absurd in Congress drawing the line for vehicle ownership expense eligibility at those debtors who are making

11

payments on the vehicle. Numerous safeguards are in place to protect both debtors and creditors. Debtors who own old or high mileage cars "free and clear," are entitled to an extra $200 per month operating expense. Also, a "free and clear" owner is not "stuck" with the vehicle operating expenses allowed under the IRS Standards. . . . [The statute] allows additional expenses based on "special circumstances."

Id. (footnote omitted)

So—two courts found the statutory language to have the same clear and unambiguous meaning, but for different reasons. What made the language "clear" to one court was not what made it "clear" to the other.

One sees a similar pattern in the cases which reach the opposite conclusion. In In re Fowler, the Delaware bankruptcy court concluded that, "based on the plain language of the statute, the Debtor is entitled to take a car ownership deduction in the amount set forth in the Local Standards for her ownership of one car, even though she has no car payment." In re Fowler, 349 B.R. 414, 419 (Bankr. D. Del. 2006). In the paragraph leading to this conclusion, however, the court discussed the fact that the statute did not refer to use of the Local Standards as a cap, the fact that Congress used the word "actual" in referring to some kinds of expenses in contrast to using the word "applicable" to apply to others, and the fact that interpreting the statute to deny the debtor the deduction would lead to unfair results. Id. at 418. Thus, the Fowler court looked at several different facts to lead it to conclude that the statutory language was "plain."

In In re Prince, the North Carolina court also concluded that "[i]f th[e] statutory language [of § 707(b)(2)(A)(ii)(I)] is given its plain meaning, the expenses

12

that are mandated as the debtor's monthly expenses are the standard amounts that are applicable to the debtor in accordance with the tables issued by the IRS as the National and Local Standards." In re Prince, ___ B.R. ___, 2006 WL 3501281 at *2 (Bankr. M.D.N.C. 2006). That court based *its* plain meaning conclusion on the fact that the Local Standards tables "contain no reference to monthly loan or lease payments and do not condition the standard ownership allowances upon the existence of such payments." Id. at *3.

Again, two courts found the statutory language to have the same clear and unambiguous meaning, but for different reasons. Even when agreeing that the statute's meaning is clear and unambiguous, the courts do not agree on why.

Acknowledging the possible heresy in doing so, this Court concludes that the "plain meaning" rule is not particularly helpful in analyzing the statutory language at issue, and does not find that the rule supports either the trustee's argument or the debtor's in the case at bar.

B.    *The Unfair Results Rationale*

As discussed above, in Carlin, the Oregon court reached its plain meaning conclusion that a "free-and-clear" debtor could not deduct an ownership expense based upon the fact that its interpretation would not lead to an unfair result. In re Carlin, 348 B.R. at 798. While the court did not explicitly say so, it implied that in the Chapter 13 context, where parties are trying to determine the amount of disposable income a debtor has available to pay creditors, it is only fair that the

13

debtor be allowed to reduce that available income only by using his actual expenses. Certainly this interpretation avoids an arguably unfair result for creditors (where a debtor with no actual note or lease payment would nonetheless get to remove $471 per month from the pot of money he would have to pay to his creditors through a Chapter 13 plan).

In Fowler, the Delaware court reached the opposite conclusion, in part because of a concern that if it were to read the statute as allowing the deduction only for those debtors who had an actual note or lease payment, that interpretation "would allow a debtor who had any car payment (even $1) to take the full Local Standards deduction of $471 but would not allow a debtor who had no car payment to take the deduction." In re Fowler, 349 B.R. at 418. Certainly this result seems unfair to differently-situated debtors–why should an above-median-income debtor who has a $20-per-month car payment get to deduct $471 for an ownership expense, while an above-median-income debtor who has paid off his car be allowed no deduction?

As in the case of the "plain meaning" rationale, the "unfair result" rationale can provide support for either interpretation of the statute. The Carlin decision arguably results in unfair treatment of similarly-situated debtors. The Fowler interpretation arguably leads to results that are unfair to creditors in cases where debtors do not have actual note or lease payment expenses each month.

At the hearing on the trustee's objection to confirmation in this case, the

14

debtors argued that although debtors who own their vehicles free and clear do not have to make monthly note or lease payments, they nonetheless need to deduct an ownership expense from their disposable income calculations. The debtors reasoned that in most cases, debtors who have managed to pay off their vehicles in full have done so because they have owned their vehicles a long time. Thus, their vehicles are older, and therefore are more likely to require repairs, or even replacement, during the life of their Chapter 13 plans. Allowing them to deduct the vehicle ownership expense, the debtors imply, would allow them to bankroll some money for the day their car needs a new engine, rather than paying that money to their creditors.

This is, in the Court's view, a subset of the unfair results rationale. The debtors basically argue that it is unfair to make them use the $471 a month they could deduct as an ownership expense when they might–in fact, more than likely will–need that money in the future to repair their vehicles or buy new ones. Several courts have confronted this version of the unfair result rationale.

The debtors in McGuire raised this argument. The Missouri court rejected it in the Chapter 13 context, finding, "The problem with this argument is that it presumes that a debtor's projected disposable income is fixed at the outset of the case, and that that number is not modifiable based on changes in the debtor's actual circumstances." In re McGuire, 342 B.R. at 614. The court noted that under Eighth Circuit law, debtors had a "duty . . . to pay their actual net disposable income

15

received during the plan period to the unsecured creditors," and therefore that "a debtor's projected disposable income changes from year to year." For this reason, the McGuire court concluded that "if at some point the McGuires do need to purchase a vehicle, they will be able to adjust their disposable income, and plan payment, accordingly." Id.

The law of the Eighth Circuit, of course, is not necessarily the law of other circuits. Further, if one concludes, as the Fowler, Wilson, Hartwick, Haley, Grunert and Prince courts have done, that § 707(b)(2)(A)(ii)(I) creates fixed deductions for above-median debtors in certain categories of expenses, then it may be questionable whether the Eighth Circuit's requirement that debtors change their plan payments when they have changes in their income or expenses survives BAPCPA–at least with regard to those categories of expenses.

But the debtor in Barraza raised the same argument in the Chapter 7 abuse context, and the Texas court rejected it for different reasons than the Missouri court had done. The Barraza court found that by raising this argument, the debtor implied that BAPCPA denied the debtor "equal protection because it deprive[d] him of access to chapter 7 when other less-deserving debtors [could] file for relief under that chapter." In re Barraza, 346 B.R. at 728. The court responded to this suggestion by noting that there is no constitutional right to discharge debts in bankruptcy, and thus no constitutional right to file under Chapter 7 rather than under Chapter 13. Id. Further, the court noted that any equal protection analysis

16

of BAPCPA would have to be conducted under the rational basis standard.  Id. at

728-29.  Under that standard, the Barraza court concluded, a congressional

assumption "that debtors who own vehicles outright have a greater ability to

commit funds to repay unsecured creditors than debtors who have financed or

leased vehicles" could not be said to lack a rational basis.  Id. at 729.

In practical terms, the Barraza court noted that "Congress has not

determined that debtors who own their vehicles outright should not receive any

expense allowance for those vehicles.  Instead, the Local Standards permit all

vehicle owners to claim an operating expense deduction for up to two vehicles,

regardless of whether the vehicles are financed, leased, or owned outright."  Id.[3]

Finally, in response to the debtor's argument that he ought to be allowed to

take the ownership deduction because he worked 80 hours a week at two jobs, paid

his child support, paid his taxes, and lived modestly (as evidenced by his ownership

of an 18-year-old truck), the Barraza court stated,

> . . . The means test does not distinguish those who have tried hard
> from those who have hardly tried.  It is a blind legislative formula that
> attempts to direct debtors to a chapter that provides for at least some
> measure of repayment to unsecured creditors over a period of years.
> Like any other effort at social or economic legislation, it is not perfect.

_____

[3]    The Barraza court also reasoned that "the Internal Revenue Service
provides that in situations where the taxpayer owns a vehicle that is over six years
old and/or has reported mileage of 75,000 miles or more, an additional operating
expense of $200 will generally be allowed."  In re Barraza, 346 B.R. at 729.  The
court took this fact from the Internal Revenue Manual.  Because this Court has
concludes later in this opinion that Congress appears to have eschewed the IRM in
creating the means test, it does not factor this part of Barraza's reasoning into its
analysis.

17

> Consequently, the fact that the debtor can hypothesize examples in which the means test operates unfairly does not, by itself, serve as a basis for the court to refuse to apply it here.

Id. at 729.

In In re Carlin, the court rejected the argument for yet another reason. It noted that "[s]ection 707(b)(2)(*B*) is . . . available for 'above the median' Chapter 13 debtors. . . . . Section 707(b)(2)(*B*), allows additional expenses based on "special circumstances." *See, In re Renicker*, 342 B.R. 304 (Bankr. W.D. Mo. 2006) (recognizing § 707(b)(2)(B) as applicable in Chapter 13 disposable income analysis)." In re Carlin, 348 B.R. at 798. Thus, the Carlin court found that if a debtor needs her car to get to her job, and that car breaks down, she does not need the savings she would collect from being allowed the ownership deduction; the debtor can, under § 707(b)(2)(B), seek a change in her disposable income analysis based on special circumstances.

Like the courts above, this Court finds this particular version of the unfair results rationale unpersuasive, but perhaps for a more basic reason. Experience teaches that things come up during the course of three- or five-year Chapter 13 plans. Life happens to debtors. Medical issues arise, and the costs connected with those issues are unforeseen at the time debtors propose their plans. Debtors lose jobs, or their spouses do. Acts of nature occur which give rise to expenses—the storm which fells a tree onto the debtor's roof, the flood which destroys the basement. During the course of almost any Chapter 13 plan, expenses arise which could be

18

handled if the debtor had a "slush" fund, or a rainy-day fund.

But the Bankruptcy Code is not designed to provide Chapter 13 debtors with slush funds. The whole "projected disposable income" idea in Chapter 13 is an effort to make sure that while the debtor can provide for his basic, every-day needs, every cent above what is needed to meet those needs goes to pay the creditors. For "free and clear" debtors to argue that they should be able to deduct the vehicle ownership expense in order to provide for the possibility that they may have new vehicle expenses down the road is really an argument for building into the disposable income requirement of § 1325(b)(1)(A) an emergency cushion. Nothing in the statutory language provides for such a cushion, and this Court is reluctant to read such a cushion into the statute.

C.    *The "Ownership/Liability" Distinction Rationale*

As noted above, the IRS provides Local Standards for vehicle "ownership" expenses. In In re McGuire, the court stated that "if a debtor is not incurring expenses for the purchase or lease of a vehicle, the debtor cannot claim a vehicle ownership expense under the IRS standards." In re McGuire, 342 B.R. at 613. The Delaware court analyzed this statement from McGuire in its decision in Fowler, and concluded that the McGuire court was "equating 'ownership' with 'liability for debt.'" In re Fowler, 349 B.R. at 420. In other words, the Fowler court read the decision in McGuire to hold that a debtor was not entitled to deduct an "ownership" expense unless that debtor could prove that she was liable on the note or lease. The Fowler

19

court determined that "owning" a vehicle for the purposes of claiming the ownership deduction was not the same thing as being liable on a vehicle note or lease, and found support for this conclusion in <u>In re Demonica</u>, 345 B.R. 895 (Bankr. N.D. Ill. 2006).

In <u>Delmonica</u>, the bankruptcy court for the Northern District of Illinois first compared the "applicable" and "actual" language in § 707(b)(2)(A)(ii)(I), and concluded that in order to give meaning to Congress' use of "applicable" in some expense categories vs. "actual" in others, above-median debtors had to be allowed to "deduct the full amounts listed in the National and Local Standards for the categories of expenses that fall within those standards." <u>In re Delmonica</u>, 345 B.R. at 902. What was unique about the facts before it, the <u>Delmonica</u> court noted, was that the debtor in that case was "not liable on the mortgage for the home or the note for the vehicles." <u>Id.</u> The question, therefore, was whether a debtor who was not liable for expenses which fall under the National and Local Standards could take the deductions for those expenses. <u>Id.</u>

The debtor in <u>Delmonica</u> did not claim a vehicle ownership expense because he did not own a vehicle. <u>Id.</u> at 904. The debtor was, however, "the primary user" of what appears to have been his wife's vehicle, "and in fact ma[de] the monthly vehicle payment" for the vehicle. <u>Id.</u> The <u>Delmonica</u> court found that while the debtor did not "own" the vehicle (he was not liable on the note), he did (voluntarily, apparently) incur a monthly ownership expense for the vehicle. Accordingly, the

20

court found that "the Debtor can claim the Local Standard for transportation ownership/lease expense . . . ." Id. at 905.

The Fowler court relied on the reasoning in Delmonica to conclude "that section 707(b)(2)(A)(ii)(I) permits the Debtor to take the Local Standards deduction for ownership of a car even though she has no car payment." In re Fowler, 349 B.R. at 420. This conclusion is somewhat confusing. The Delmonica court found that, although the debtor in Delmonica did not own a vehicle (in other words, was not liable on the note), he incurred a monthly ownership expense because he made the car payment. This is why the court concluded that the debtor could take the ownership deduction—*not because he owned a vehicle, but because he made a vehicle payment.* The Fowler court relied on this reasoning to conclude that a debtor who owned a vehicle but was not liable on the note (because she had paid off the vehicle) could take the ownership deduction, *not because she made a vehicle payment, but because she owned a vehicle.*

While the Fowler court's reliance on Delmonica's reasoning seems to have led it to draw the opposite conclusion from the one drawn by the Delmonica court, its discussion of "ownership" and "liability" raises an interesting and troubling question: which debtors are entitled to deduct an "ownership" expense? In other words, what makes a debtor a vehicle "owner?" Is it the fact that he has a vehicle titled in his name? Is it the fact that his is, or has been at some point, liable on a note or lease for the vehicle? Is it the fact that he makes note or lease payments

21

each month–regardless of whether the car is titled in his name or whether he is liable on the note or lease?

BAPCPA provides no guidance in answering this question. Neither does the IRS Local Standards chart. Form B22C itself, promulgated by the Judicial Conference Committee for the purposes of assisting parties in calculating, among other things, disposable income, directs the debtor to "[c]heck the number of vehicles for which you claim *an ownership/lease expense*." Form B22C, Line 28. This language seems to imply that a debtor who makes some sort of note or lease payment each month–regardless of whether the vehicle is titled in his name or whether he is obligated on the note or lease–can deduct the ownership expense.

Under the circumstances of this case, the Court is reluctant to interpret the language of § 707(b)(2)(A)(ii)(I) by attempting to ferret out how Congress meant one to determine ownership. The trustee in this case does not argue that the debtors should not be allowed to deduct the ownership expense because they do not own vehicles. Rather, she argues that debtors who have no actual monthly vehicle ownership expense should not be allowed to take the deduction. The argument the parties present here relates to whether the debtor must have an actual expense each month in order to claim the deduction, and this Court can resolve that argument by conducting an analysis of the text of the statute, as it will do shortly.

There may someday arise a case in which an adventuresome debtor who has no vehicle titled in her name, is not liable on any vehicle note or lease, and does not

Case 06-25130-pp    Doc 39    Filed 02/20/07    Page 22 of 31

make any vehicle note or lease payment attempts to deduct the vehicle ownership expense. At that time, some court will be forced to grapple with the question whose outlines are discernable in Delmonica and Fowler–the question of whether the language of § 707(b)(2)(A)(ii)(I) can be interpreted to create a flat vehicle ownership deduction for all above-median-income debtors–period. This case does not raise that question, and thus the Court does not find this rationale helpful in deciding the issue at hand.

D.      *The Policy Rationale*

In Fowler, the court raised a policy rationale for allowing above-median debtors to claim the ownership deduction even if they do not have an actual monthly ownership expense. The Fowler court explained,

> . . . Congress intended that there be an easily applied formula for determining when the court should *presume* that a debtor is abusing the system by filing a chapter 7 petition. Presumptions are typically created to avoid litigation. . . . . By reference to the National and Local Standards, Congress intended the Court to use a chart of standard expenses for all debtors which could be easily and uniformly applied: the Court simply takes the expense amount from the applicable column based on the debtor's income, family size, number of cars and/or locale. This easy application should avoid litigation.

In re Fowler, 349 B.R. at 420-421 (citations omitted).

Fowler involved the means test in the Chapter 7 context. It may very well be true that Congress created the § 707(b)(2)(A) presumption of abuse to, among other purposes, avoid protracted litigation over whether debtors are abusing the system by filing Chapter 7 petitions instead of Chapter 13 petitions. This Court does not

23

know whether such was Congress's purpose or not.

But some people think that Congress intended the means test to give effect to a different policy—the policy of making sure that debtors who could paid as much as possible to their creditors. As this Court has noted in other cases, at the signing ceremony for BAPCPA, President George W. Bush stated:

> In recent years, too many people have abused the bankruptcy laws. They've walked away from debts even when they had the ability to repay them. This has made credit less affordable and less accessible, especially for low-income workers who already face financial obstacles.

> The bill I sign today helps address this problem. Under the new law, Americans who have the ability to pay will be required to pay back at least a portion of their debts. . . . This practical reform will help ensure that debtors make a good-faith effort to repay as much as they can afford.

Press Release, White House Press Office, President Signs Bankruptcy Abuse Prevention, Consumer Protection Act (Apr. 20, 2005), available online at http://www.whitehouse.gov/news/releases/2005/04/20050420-5.html.

If Congress intended BAPCPA, and particularly the projected disposable income requirement of § 1325 and the means test as applied in the Chapter 13 context, to "ensure that debtors make a good-faith effort to repay" unsecured creditors "as much as they can afford," then allowing debtors who do not have actual note or lease payments to nonetheless deduct the Local Standard vehicle ownership allowance would seem to frustrate that intent.

So—one can envision policy interests which support both the debtor's position in the case at bar and the trustee's. Because of the existence of these competing

24

policies, the Court does not find the policy rationale helpful.

E. *The Applicable-vs.-Actual Rationale*

In <u>Fowler</u>, the Delaware court discussed the fact that Congress said that the debtor's monthly expenses for categories of expenses listed in the National and Local Standards "shall be the *applicable* monthly expense amounts specified under the National and Local Standards." <u>In re Fowler</u>, 349 B.R. at 418, *quoting* § 707(b)(2)(A)(ii)(I). The <u>Fowler</u> court went on to note that in the very next part of that same sentence of § 707(b)(2)(A)(ii)(I), Congress said that the debtor's monthly expenses "for the categories specified as Other Necessary Expenses" were the debtor's *"actual"* expenses. <u>Id.</u> This use of the word "applicable" in the context of some expenses and "actual" in the context of other expenses another led the <u>Fowler</u> court to conclude that a debtor should be allowed to deduct the Local Standard amount for ownership of a vehicle regardless of whether he had a note or lease payment.

Distilled to its essence, the <u>Fowler</u> court's argument is this: Congress used the word "actual" to refer to the amount of money the debtor actually pays each month for the relevant expense. If a debtor makes a mortgage payment of $378 per month, then her "actual" mortgage expense is $378 per month–regardless of what the IRS lists as a reasonable mortgage expense in its Local Standards for mortgage expenses. It follows that if a debtor owns her house free and clear, and does not have a mortgage payment, her "actual" mortgage expense is $0 per

month–regardless of what the IRS indicates is a reasonable mortgage expense under its Local Standards.

This argument leads to the conclusion that where Congress used the word "actual," it meant for the debtor to deduct only the amount the debtor actually had to pay for that particular expense. Where, in contrast, Congress used the word "applicable," it must have meant something other than the actual payment the debtor has to make each month. This begs the question–what else could Congress have meant by the word "applicable?"

The Fowler court concluded–as did Northern District of Illinois Chief Judge Wedoff in his article *Means Testing in the New World*–that by "applicable" expense, Congress meant to allow the above-median debtor to claim the Local Standard expenses as a "fixed allowances," whether the debtor made lower–or no–actual payments in those categories. In re Fowler, 349 B.R. at 418, 419, *quoting* Wedoff, *Means Testing in the New World*, 70 Am. Bankr. L.J. 231, 255-57 (Spring 2006).

This conclusion was buttressed, for the Fowler court, by the fact that while Congress imported into the means test the IRS National and Local Standards, it did not adopt in § 707(b)(2)(A)(ii)(I) certain language from the Internal Revenue Manual ("IRM"). The Fowler court noted that § 5.15.1.7 ¶4 of the Internal Revenue Manual provides that "[t]he taxpayer is allowed [to deduct for tax purposes] the local standard *or the amount actually paid, whichever is less.*" Id. at 418 (emphasis added). By this language, the IRS uses the local standards as a cap on the amount

26

a taxpayer can deduct. The taxpayer may deduct his actual expense up to the amount in the local standard, but no more than the amount in the local standard.

The <u>Fowler</u> court reasoned that "[t]he fact that Congress did not use language similar to the IRM evidences that it did not intend the Local Standards to apply as a cap." <u>Id.</u> In other words, the court concluded that, had Congress wanted to use the National and Local Standards as a cap on a debtor's expenses, it would have worded the statute differently–possibly stating that the debtor could claim her actual monthly expense or the Local Standard, whichever was less.

In this Court's mind, this is the first rationale that gives support to one party or the other in the case at bar. This rationale provides compelling support for the debtor's argument–that § 707(b)(2)(A)(ii)(I) gives above-median-income debtors a flat ownership deduction, regardless of whether they had an actual car payment expense or not.

F.   *The Reliance on IRS Materials Rationale*

Several of the courts which did not allow "free and clear" debtors to take the ownership deduction reached their decisions by referencing certain materials promulgated by the Internal Revenue Service.

As noted above, Congress explicitly imported into the § 707(b) means test the IRS National and Local Standards. In <u>In re Hardacre</u>, the Texas court reasoned, "Because the Local Standards are issued by the Internal Revenue Service, it is instructive to refer to publications of that organization for guidance as to the types

27

of 'debt payments' that can reduce allowances under the Local Standards." In re Hardacre, 338 B.R. 718, 726 (Bankr. N.D. Tex. 2006). The court went on to look at both the IRS Collection Financial Standards and the Internal Revenue Manual, and concluded that in those publications, "the Internal Revenue Service makes clear that when considering allowances for housing an transportation, the taxpayer is allowed the amount provided by the Local Standards or 'the amount actually spent.'" Id., *quoting* Collection Financial Standards and Internal Manual § 5.15.1.7(4) (May 1, 2004). The courts in McGuire, Barraza, Hartwick, and Carlin followed suit, each looking to the Collection Financial Standards and the Internal Revenue Manual for guidance. *See* In re McGuire, 342 B.R. at 612, 613; In re Barraza, 346 B.R. at 728; In re Hartwick, 352 B.R. at 869; In re Carlin, 348 B.R. at 797.

In Fowler, however, the court found evidence in the legislative history of BAPCPA that Congress could have used the language in the Collection Financial Standards and the Internal Revenue Manual in constructing the means test had it wanted to do so, but chose not to. The court pointed out that

> . . . A prior version of the BAPCPA which was never passed defined "projected monthly net income" for the means test to require a calculation of expenses as follows: (A) the expense allowances under the applicable National Standards, Local Standards, and Other Necessary Expenses allowance (excluding payments for debts) for the debtor . . . in the area in which the debtor resides as determined under *the Internal Revenue Service financial analysis* for expenses in effect as of the date of the order for relief. H.R. 3150, 150[th] Congress (1998) (emphasis added). The reference to the Internal Revenue Service financial analysis was replaced by the language currently in section

28

707(b)(2)(A) which simply states that a debtor gets the "applicable monthly expense amounts specified under the National and Local Standards." 11 U.S.C. § 707(b)(2)(A)(ii)(I).

The change from the prior version evidences Congress' intent that the Courts not be bound by the financial analysis contained in the IRM and lends credence to the Court's conclusion that it should look only to the amounts set forth in the Local Standards.

In re Fowler, 349 B.R. at 419.

In In re Grunert, the court found even further evidence in the legislative history that Congress did not intend to import the actual-expense-capped-by-Local-Standards method used by the IRS. The Grunert court quoted from the Report of the Committee on the Judiciary, House of Representatives, to Accompany S. 256, H.R. Rep. No. 109-31, pt. 1 at 553 (2005), which stated, "The bill also makes substantial changes to chapter 13 by substituting the IRS expense standards to calculate disposable income . . . . The formula remains inflexible and divorced from the debtor's actual circumstances." In re Grunert, 353 B.R. at 594.

The North Carolina court did not look to the legislative history in In re Prince, but directly to the language of § 707(b)(2)(A)(ii)(I) itself. The Prince court stated, "The relevant language of section 707(b)(2)(A)(ii)(I), in specifying the methodology for determining a debtor's expenses under that provision, refers only tot he 'National Standards' and the 'Local Standards' and does not refer to or purport to include the numerous rules and practices specified throughout the Internal Revenue Manual." In re Prince, ___ B.R. ___, 2006 WL 3501281 at *2. The New Hampshire bankruptcy court used the same reasoning in In re Haley, 354 B.R.

29

at 343.

In light of the legislative history pointed out in <u>Fowler</u> and <u>Grunert</u>, and the absence of reference to the IRS Manual in the statute pointed out in <u>Prince</u> and <u>Haley</u>, this Court finds that it is not appropriate to look to the Financial Collection Analysis or the Internal Revenue Manual to interpret the word "applicable."[4] Looking only at the language of the statute and not to those publications lends further support to the debtor's argument in this case—that § 707(b)(2)(A)(ii)(I)'s admonition that the above-median-income debtor's monthly expenses "shall be the debtor's applicable monthly expense amounts specified under the . . . .Local Standards" means that above-median-income debtors may deduct the Local Standard amount, regardless of whether they have an actual ownership expense.

## V.   **Conclusion**

Thus, this Court concludes that the debtors in this case are entitled to deduct on their Form B22C the IRS Local Standard expense amount for vehicle ownership, even though they own their vehicles outright and do not make monthly note or lease payments.  The Court does not base this decision on the plain meaning of the statute—it does not find the statute's meaning plain.  It does not reach this decision to avoid an unfair result, or to implement a particular policy.

---

[4] The Court reaches this conclusion in spite of the fact that, it must confess with chagrin, it relied on exactly these publications in its October 2006 decision in <u>In re Balcerowski</u>, 353 B.R. 581 (Bankr. E.D. Wis. 2006).  Such, it appears, is the nature of BAPCPA jurisprudence—courts not only are inconsistent the decisions of other courts, but this Court, at least, is inconsistent with its own.

30

The Court bases this decision solely on two rationales–first, the fact that Congress used the word "applicable" instead of the word "actual" in referring to the expenses enumerated in the National and Local Standards, and second, the fact that Congress appears to have considered importing the language from the Internal Revenue Manual and the Financial Collection Analysis into § 707(b)(2)(A)(ii)(I), but chose not to do so.

WHEREFORE, the Court hereby OVERRULES the trustee's objection to confirmation of the debtors' modified plan.

SO ORDERED this 20th day of February, 2007.

HON. PAMELA PEPPER
United States Bankruptcy Court

31